Alexander H. Martin, Jr., Dorothy A. Martin v. Commissioner.
Martin v. Commissioner
Docket No. 89302.
United States Tax Court
T.C. Memo 1963-26; 1963 Tax Ct. Memo LEXIS 315; 22 T.C.M. (CCH) 101; T.C.M. (RIA) 63026; January 30, 1963
*315 Held, that petitioners derived unreported gains from sales of real estate, in the amounts of $7,425 in the year 1953, $3,000 in the year 1954, and $1,300 in the year 1955. Held, that petitioners derived unreported interest income, in the amounts of $523.55 in the year 1953, $1,289.98 in the year 1954; $830.12 in the year 1955; and $579,86 in the year 1956. Held, that petitioners have failed to establish error in the Commissioner's determinations that additions to tax for the nonfiling of declarations of estimated tax for the years 1953 and 1954 should be imposed under section 294(d)(1)(A) of the 1939 Code. Held, that petitioners have failed to establish error in the Commissioner's determinations that additions to tax for negligence or intentional disregard of rules and regulations should be imposed for each of the years 1953 through 1956 under section 293(a) of the 1939 Code and section 6653(a) of the 1954 Code. Held, that assessment of deficiencies for the years 1953 through 1956 is not barred by the statutes of limitation. Alexander H. Martin, Jr., pro se, 33 Auburn Ave., Columbus, Ohio. James C. Bright, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The Commissioner determined deficiencies in income tax and additions to tax against the petitioners for years and in amounts as follows: 1953
1954
1955
1956
Deficiencies
$2,825.45
$1,780.60
$900.58
$672.47
Additions to tax: Sec. 294(d)(1)(A), I.R.C. 1939
254.09
152.55
Sec. 293(a), I.R.C. 1939
141.27
Sec. 6653(a), I.R.C. 1954
89.03
45.03
33.62
*317 The issues for decision are: 1. Whether the petitioners derived unreported gains from sales of real estate, in the amounts of $7,425 in 1953; $3,000 in 1954; and $1,300 in 1955. 2. Whether the petitioners derived unreported interest income, in the amounts of $523.55 in 1953; $1,289.98 in 1954; $830.12 in 1955; and $579.86 in 1956. 3. Whether the petitioners' failure to file declarations of estimated tax for the years 1953 and 1954 was due to reasonable cause and not due to willful neglect within the meaning of section 294(d)(1)(A) of the 1939 Code. 4. Whether any part of the petitioners' deficiencies in income tax for the years 1953 through 1956, was due to negligence or intentional disregard of rules and regulations but without intent to defraud, within the meaning of section 293(a) of the Internal Revenue Code of 1939, and section 6653(a) of the Internal Revenue Code of 1954. 5. Whether assessment of deficiencies for the several years 1953, 1954, 1955, and 1956, is barred by the statutes of limitation. All other issues raised by the pleadings were conceded by the petitioners, either at the trial or on their briefs. Separate findings of fact *318 and a separate opinion as to each of the above issues are hereinafter set forth. Issue I Findings of Fact Petitioners, Alexander H. Martin, Jr., and Dorothy A. Martin, are husband and wife. For each of the taxable years involved, they filed a joint Federal income tax return with the district director of internal revenue at Cleveland, Ohio. Alexander, during the years 1953 and 1954 and also until August 1955, was employed as a claims investigator for the Industrial Commission of the State of Ohio. And also, throughout all the years involved, he engaged in practice as an attorney at law, operated as a licensed real estate broker, and made numerous purchases and sales of real estate. During the years 1953, 1954, and 1955, Alexander and his wife purchased and resold seven parcels of real estate, as follows: 1. Real estate transactions in 1953. (a) Under the terms of a deed which was dated March 17, 1953, title to certain real property located at 1621 East 93rd Street, Cleveland, was acquired in the name of the wife, Dorothy, from Louis Mallama. The total consideration for said property was $23,500. Thereafter this property was sold by petitioners to Bernice Pettus for $25,000; *319 and title thereto was transferred to Bernice by a general warranty deed dated March 30, 1953. This transaction resulted in a gain of $1,500 to the petitioners. (b) Alexander purchased real property located at 1347 East 117th Street in Cleveland, from Richard and Mary H. Tintera; and he received a deed therefor which bore the date of August 6, 1953. The total consideration for this property was $9,000. Prior to receiving said deed, he and his wife sold this property to Sammie and Corene Laury for $10,500 under a land contract dated June 15, 1953. [1] Said transaction resulted in a gain to petitioners of $1,500. (c) *320 Under date of July 10, 1953, title to certain real property located at 8804 Birchdale, Cleveland, was transferred to Alexander by Nicholas and Emma Sabetta. The total consideration for this property was $8,075. On August 6, 1953, Alexander and his wife sold this property to Rather Grier for $10,000 under a land contract. This transaction resulted in a gain to the petitioners of $1,925. (d) Alexander and his wife acquired title to real property located at 1615 East 73rd Street, Cleveland, from Thomas G. and Edith V. Spanos, under the provisions of a deed dated March 12, 1953. The total consideration for this property was $17,000. Petitioners thereafter sold said property to Eugene F. and Clara Robinson for $18,000 under a land contract dated April 15, 1953; and this transaction resulted in a gain to petitioners of $1,000. (e) In 1953, Alexander purchased from David McLean the real property located at 1223 East 112th Street, Cleveland, for a total consideration of $9,000. Thereafter, he and his wife sold said property to Johnnie and Lizzie Edwards under a land contract dated September 30, 1953, for a total price of $10,500. This yielded a gain to petitioners of $1,500. 2. Real *321 estate transaction in 1954. Under a deed dated March 27, 1954, Alexander acquired title to the real property located at 6113 Quimby Avenue, Cleveland, from Nicholas and Doris Rosin. The total consideration for said property was $9,500. Thereafter, during the year 1954, Alexander and his wife sold this property to Grady Collins for a total consideration of $12,500, resulting in a gain to petitioners on the sale of $3,000. 3. Real estate transaction in 1955. In a deed dated November 6, 1953, Mildred Kaselonis transferred to Alexander the title to real property located at 11310 Primrose Avenue, Cleveland. The total consideration for said property was $8,700. Subsequently, on August 8, 1955, Alexander and his wife entered into a land contract with Willie Purefoy regarding said property, under which they sold the property to Purefoy for a price of $10,000. This resulted in a gain to petitioners from said sale of $1,300. Many of the land contracts and the documents pertaining to the purchases and the sales of the above-mentioned properties were not introduced into evidence; and thus, the record is incomplete as to many of the details pertaining thereto. Petitioners, in their joint *322 income tax returns for the years 1953, 1954, and 1955, did not report their gains from any of the above-stated real estate transactions. Furthermore, they made no election, either in said returns or subsequently, to report any of their gains from these transactions on the installment basis. The Commissioner determined that the petitioners derived gains, taxable as ordinary income, from these transactions as follows: $7,425 in 1953; $3,000 in 1954; and $1,300 in 1955 (being the same amounts which we have found that they derived). And he further determined that petitioners had not, included any of said gains in their joint Federal income tax returns for said years. Opinion The petitioners contend as to this issue that the above-stated seven real estate transactions were merely "financing devices" which they used to obtain financing for the persons to whom they sold the properties. The evidence herein does not however support such contention. The petitioners, in their attempt to support said contention, have relied principally upon self-serving statements and conclusions, made by Alexander in the course of his testimony; and also upon certain of the deeds, land contracts and mortgages *323 that were employed in connection with the abovementioned transactions. But the testimony of three other witnesses, including that of Sammie Laury and Willie Purefoy who had purchased certain of said properties, is in direct conflict with said testimony of Alexander. And we, after considering and weighing all of the evidence, have resolved this conflict of testimony against the petitioners. Also, the above-mentioned deeds, land contracts and other instruments received in evidence, do not support or even tend to support, petitioners' said contention; but rather tend to refute the same. These instruments all indicate that petitioners executed them as principals; and they do not suggest in any way that petitioners were acting in any other capacity. Also, notwithstanding that Alexander was a capable businessman who was experienced in the handling of numerous real estate transactions, he failed to present any cancelled checks, receipts, memoranda or other documents which either tend to indicate, or give any support to the above-mentioned contention that the transactions involved were merely "financing devices." Since petitioners did not elect to report their gains from said sales on *324 the installment basis, such gains are includable in their incomes for the respective years in which the sales were made. We sustain the Commissioner's determinations as to this issue. Issue II Findings of Fact Five of the above-mentioned real estate sales by petitioners were made under land contracts. These five sales involved the properties located at 1621 East 93rd Street, 1347 East 117th Street, 1615 East 73rd Street, 1223 East 112th Street, and 11310 Primrose Avenue. Said land contracts all provided for the payment of interest to the petitioners on the unpaid balance thereof at the annual rate of 6 percent. The Commissioner, in his notice of deficiency herein, determined that petitioners had received interest income on these land contracts, which they did not report in their income tax returns, as follows: $523.55 in 1953; $1,289.98 in 1954; $830.12 in 1955; and $579.86 in 1956. Opinion The petitioners presented no evidence which tends to establish error in the Commissioner's determinations that they received unreported interest income in the above-stated amounts during the years involved. They rely, rather, on the same contention which they presented under Issue *325 I,$ ii.e., that the sales were merely "financing devices." And from this, they then argue that said interest income was not theirs. Our foregoing holding as to Issue I is dispositive of said first contention. And petitioners' argument is unsupported by evidence, and is not sufficient in itself to establish error in the Commissioner's determinations. We therefore decide this issue for the respondent. Issue III Findings of Fact and Opinion Petitioners failed to file declarations of estimated tax for the years 1953 and 1954; and the Commissioner determined in his notice of deficiency that additions to tax should be imposed by reason of such failure, under section 294(d)(1)(A) of the 1939 Code. This section makes provision for an addition to tax in the case of a failure to file a timely declaration of estimated tax, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not willful neglect. The petitioners offered no evidence with respect to this issue; and therefore, they have not carried their burden of establishing error in the respondent's determination. We decide this issue also for the respondent. Issue IV Findings *326 of Fact and Opinions The Commissioner, in his notice of deficiency, determined that part of petitioners' deficiency in income tax for each of the years 1953, 1954, 1955, and 1956, was due to negligence or intentional disregard of the rules and regulations; and accordingly, he determined an addition to tax for the year 1953 under section 293(a) of the 1939 Code; and an addition to tax for each of the years 1954, 1955, and 1956, under section 6653(a) of the 1954 Code. As to this issue likewise, the burden of proving error in the Commissioner's determination rested upon the petitioners. But here also, the petitioners presented no evidence which tends to establish error in said determination. We therefore decide this issue for the respondent. Issue V Findings of Fact Petitioners filed their joint income tax return for the year 1953 on March 15, 1954; and they therein reported gross income in the amount of $12,803.30. This amount did not include any portion of the above-mentioned $7,425 profits on their real estate transactions during the year 1953; nor did it include any portion of the above-mentioned $523.55 interest income for said year. Thereafter on November 25, 1958, which *327 was more than 3 but less than 5 years after the filing and due date of said return, petitioners entered into a consent agreement (Form 872) with the Internal Revenue Service, under which the time for making any assessment of income tax for the year 1953 was extended to June 30, 1960. For the following year 1954, petitioners filed their joint income tax return on April 15, 1955; for the year 1955, they filed their joint income tax return on April 15, 1956; and for the year 1956, they filed their joint income tax return on October 15, 1957, after having previously secured extensions for the filing of the same. Subsequent to the filing of each of these returns, petitioners entered into consent agreements (Form 872) with the Internal Revenue Service, under which the times for making any assessments of income taxes for the years 1954, 1955, and 1956, were extended as follows: Date consent
Period of assess-
Year
executed
ment extended to
1954
March 17, 1958
June 30, 1959
March 30, 1959
June 30, 1960
1955
December 31, 1958
June 30, 1960
1956
March 3, 1960
June 30, 1961
The deficiency notice herein, pertaining to the years 1953 through 1956, was issued *328 on June 23, 1960. Opinion This final issue is whether assessment of a deficiency in respect to the income tax of petitioners for each of the years 1953 through 1956 is barred by the statutes of limitation. A regards the year 1953, section 275(c) of the 1939 Code provides in substance, that the tax may be assessed at any time within 5 years after a taxpayer's return was filed, if the taxpayer omitted from the gross income stated in the return, an amount properly includable therein which is in excess of 25 percent of the amount of the gross income returned. Also, section 276(b) of said Code provides in substance, that where before the expiration of the time for assessment which is prescribed in section 275, the Commissioner and the taxpayer have consented in writing to an assessment being made thereafter, the tax may be assessed at any time prior to the expiration of the period so agreed upon. As hereinbefore found as facts, petitioners reported in their joint return for 1953, gross income in the amount of $12,803.30; but they omitted therefrom the above-mentioned amount of $7,425 in gains on their real estate sales, which we have held to be includable in their gross income for *329 said year; and they also omitted the abovementioned interest income which we have held to be includable for said year. Said $7,425 of unreported gain alone is in excess of 25 percent of the gross income reported by petitioners on their 1953 return; and accordingly, the 5-year period of limitation provided by section 275(c) is here applicable. Also, before the expiration of said 5-year period, petitioners entered into a consent agreement (Form 872) with the Internal Revenue Service, under which the period for assessment of any deficiency for the year 1953 was extended to June 30, 1960. And prior to this last-mentioned date, the Commissioner issued his notice of deficiency herein. As regards the years 1954 through 1956, section 6501(c)(4) of the 1954 Code (like the above-mentioned similar provision of the 1939 Code) provides in substance that where, before the expiration of the time for assessment which is prescribed in section 6501 of said Code, the Commissioner and the taxpayer have consented in writing to an assessment being made thereafter, the tax may be assessed at any time prior to the expiration of the period so agreed upon. Before the expiration of the period prescribed by *330 said section 6501 of the 1954 Code, petitioners (as we have hereinbefore found) entered into consent agreements with the Internal Revenue Service, under which the periods for assessment of any deficiencies for the years 1954 and 1955 were extended to June 30, 1960; and for the year 1956, the period for assessment was extended to June 30, 1961. On June 23, 1960, the Commissioner issued his notice of deficiency herein. Accordingly, said notice of deficiency was timely as to all the years 1953 through 1956. The petitioners' contention as to this issue is that the consents which they admittedly executed, are invalid for lack of consideration because they did not benefit from the execution thereof. Such contention is wholly without merit. The postponement of the assessments of tax by the Commissioner by reason of the petitioners' entering into the consent agreements, is sufficient consideration for the execution and delivery of such consent agreements. Hotel Wisconsin Realty Co., 16 B.T.A. 334, affd. 47 F. 2d 842. We hold, on the basis of the foregoing, that assessment of the deficiencies in petitioners' income taxes for the several years 1953 through 1956 *331 is not barred by the statutes of limitation. Decision will be entered for the respondent. Footnotes
1. Petitioners bought and sold the majority of their real estate under land contracts, which generally specified that deeds to the property would be issued subsequent to the date the land contracts were executed. As to this particular transaction, the land contract with Sammie and Corene Laury specified that a warranty deed was to be executed within 3 years of the date of said land contract, or when the amount owed to the petitioners thereon was reduced to $5,500. Thus the deed to petitioners bore a later date than their land contract with Sammie and Corene Laury.↩